# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-786-D |
| | ) | |
| YOUR YELLOW BOOK, INC., a | ) | |
| corporation, also d/b/a YOUR | ) | |
| YELLOW BOOK, | ) | |
| | ) | |
| BRANDIE MICHELLE LAW, | ) | |
| individually and as an officer of | ) | |
| YOUR YELLOW BOOK, INC., | ) | |
| | ) | |
| DUSTIN R. LAW, individually and as | ) | |
| an officer of YOUR YELLOW | ) | |
| BOOK, INC., and | ) | |
| | ) | |
| ROBERT RAY LAW, individually | ) | |
| and as an officer of YOUR | ) | |
| YELLOW BOOK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

Plaintiff, the Federal Trade Commission (FTC), seeks preliminary injunctive relief pursuant to Fed. R. Civ. P. 65(a) to enjoin Defendants' allegedly unfair and deceptive business practices related to the solicitation and sale of internet business-listing services, in violation of § 5 of the Federal Trade Commission Act ("FTC Act"), 15, U.S.C. § 45. The parties have submitted briefing on the issue and a hearing was conducted on August 18, 2014.

## Background

Defendant, Your Yellow Book, Inc. (YYB), is an Oklahoma corporation in existence since 2011. Defendant Brandie Michelle Law (Brandie Law) is a resident of the State of Oklahoma and

a former officer of YYB. Defendants Dustin R. Law (Dustin Law) and Robert Ray Law (Robert Law) are residents of the State of Oklahoma and current officers of YYB.[1]

YYB is engaged in the business of the solicitation and sale of internet business-listing services. YYB purchases customer lists from a third-party website. YYB then sends facsimile "proposals" or "solicitations" to consumers across the United States utilizing the contact information provided from these customer lists. The proposals target consumers for the purchase of a 12-month subscription for a "Your Yellow Book Internet Listing."

The FTC filed its Complaint in this action on July 24, 2014 and alleges that Defendants have violated § 5 of the FTC Act by misrepresenting that consumers: (1) have a preexisting business relationship with YYB; (2) previously agreed to purchase YYB's business-directory listing; and (3) owe YYB money for business-directory listings. *See* Complaint [Doc. No. 1] at Counts I - III.

On July 25, 2014, following a hearing, the Court entered an *Ex Parte* Temporary Restraining Order (TRO) [Doc. No. 10]. The Court set for hearing on August 4, 2014, the FTC's request for a preliminary injunction. The preliminary injunction hearing was continued by agreement of the parties until August 18, 2014, to allow Defendants sufficient time to retain counsel and respond to the FTC's motion. As a result, the Court entered its order extending the terms of the TRO through August 22, 2014, as further agreed to by the parties.

The FTC seeks a preliminary injunction, based on a likelihood of success on the merits and a balancing of equities, to enjoin Defendants from further violations of § 5 of the FTC Act. The FTC additionally seeks ancillary equitable relief including restitution and disgorgement.

---

[1] Robert Law is the father of Brandie Law and Dustin Law.

The Court conducted a hearing on August 18, 2014. All exhibits referenced in the Court's Order were submitted at the hearing. The Court has fully considered the parties' briefing, as well as the testimony of witnesses and the exhibits submitted by the parties at the hearing. Many of the facts relevant to the Court's determination are not disputed by the parties. The Court sets forth below only those facts necessary and relevant to its decision.

## Findings of Fact

1.      YYB is a corporation registered with the Oklahoma Secretary of State. *See* Plaintiff's Exhibit 1, Affidavit of FTC Investigator Brent D. McPeek.[2] At the hearing on August 18, 2014, testimony of the witnesses established that YYB has conducted the business practices at issue in this litigation from approximately March 2011 to present.

2.      Defendant Brandie Law is a former officer of YYB. At the August 18, 2014 hearing, the Court heard testimony from Brandie Law that as of approximately July 2011, she ceased having any relationship with YYB and removed herself as a signatory from bank accounts maintained in the name of, or on behalf of, YYB. The FTC did not refute that testimony.

3.      Defendants Robert Law and Dustin Law have been and remain officers of YYB at all times relevant to the matters at issue.

4.      YYB conducts its business operations from Robert and Dustin Law's residence. YYB faxes "proposals" or "solicitations" to consumers across the United States. According to Defendants, YYB's facsimile list was purchased from a third-party website. *See* Defendants' Opposition to Issuance of Preliminary Injunction [Doc. No. 29] at p. 2; *see also* Defendants' Exhibit 10.

---

[2]Agent McPeek also testified at the hearing.

5.      The FTC is not the only federal agency to investigate Defendants' business practices. The United States Postal Inspection Service (USPIS) conducted a prior investigation of Defendants pursuant to the postal false representation and lottery statutes, 39 U.S.C. §§3001 *et seq.*   As Defendants acknowledge, these statutory provisions are "substantially similar to the FTC Act." *See* Defendants' Opposition at p. 2.

6.      As a result of the USPIS investigation, YYB was charged with making false representations or material omissions that: YYB had a prior business relationship with businesses receiving the mailings; (2) businesses receiving the invoices had agreed to accept the business listings offered by YYB; (3) businesses receiving the invoices had agreed to pay the amount shown on the invoices for the listing; and (4) the amount listed on the invoices was owed to YYB. *See* Plaintiff's Exhibit 6. These charges substantially mirror the charges made by the FTC in this action.

7.      In the course of the USPIS investigation and settlement of claims, Defendants were advised that the business solicitation or invoice form initially used by YYB was unlawful, in part, because it did not include a disclaimer as required by federal law and regulations. This form was submitted at the hearing as Defendants' Exhibit 1.  Testimony at the hearing established YYB used this form from approximately March 2011 through May 2011 and quit using the form as a result of a settlement reached with the USPIS and a  cease and desist order signed by Brandie Law in May 2011.  *See* Plaintiff's Exhibit 6.

8.      Defendants then changed YYB's solicitation form to include a disclaimer.  Use of this form resulted in immediate further investigation by the USPIS.  This form, used from approximately May 2011 through September 2011, was submitted at the hearing as Defendants' Exhibit 3. Testimony from Defendants as well as Agent Paul Boyd, who investigated the matter, established

that this form was disapproved by the USPIS because the disclaimer was not sufficiently prominent. *See* Defendants' Exhibit 3. Use of this form led to issuance of a further cease and desist order by the USPIS that was signed by Defendant Robert Law in February 2012. *See* Plaintiff's Exhibit 6.

9. A third form, submitted at the hearing as Defendants' Exhibit 4, was approved by the USPIS. That form includes the following disclaimer in 30-point bold-faced font: "This is a proposal for the order of goods or services, or both, and this is not a bill, invoice, or statement of account due. You are under no obligation to make any payments on account of this offer unless you accept this offer and this is not the yellow pages." *See id*. At the hearing, Dustin Law testified that the form submitted as Defendants' Exhibit 4 was used by YYB from approximately September 2011 to February 2012.

10. Dustin Law testified that in February of 2012, Defendants changed the solicitation form used by YYB once again. He stated that, for approximately the last two years, YYB has used the solicitation form submitted at the hearing as Defendants' Exhibit 6. This form is the form that primarily serves as the basis for the FTC's claims against Defendants.

11. The form targets consumers for the purchase of a 12-month subscription for a "Your Yellow Book Listing" on the internet. The form includes the following features pertinent to the Court's determination: (1) a "total amount" with a dollar amount listed; (2) a section stating "Your Yellow Book listing is provided to millions of businesses throughout the United States to increase their internet exposure."; (3) a section headed "Current Listing Information" which has pre-inserted the targeted consumer's relevant business-listing information; (4) instructions to consumers to "Please verify your ACTUAL LISTING"; (5) a statement that the consumer may "cancel this 12-month contract"; (6) a section to provide credit card information for payment of the listing

subscription; and (7) the walking fingers logo used by Yellow Pages telephone directories. Also important to the Court's determination is the absence of certain items from the form. The form contains neither a disclaimer, nor information indicating that the solicitation is a "proposal" or an "offer." *See* Defendants' Exhibit 6.

12.     At the hearing, FTC Investigator Brent McPeek testified that the FTC began its investigation of Defendants' business practices approximately six to nine months ago. Investigator McPeek testified as to matters set forth in his Declaration, submitted at the hearing as Plaintiff's Exhibit 1. He testified that he became aware of over 100 fraud complaints made by consumers against YYB as reported in the Consumer Sentinel Network, a secure online database. He further testified about the declaration he obtained in the course of his investigation from Parrish White, a dispute resolution counselor with the Better Business Bureau of Central Oklahoma, Inc. (the Better Business Bureau). *See* Plaintiff's Exhibit 13.

13.     The Better Business Bureau has received numerous complaints from consumers concerning Defendants' business practices and solicitations. *See* Plaintiffs' Exhibit 14. In addition, the FTC submitted declarations from numerous consumers who had registered complaints about the Defendants' business practices with the Better Business Bureau. *See* Plaintiff's Exhibits 15-27. In multiple Better Business Bureau complaints, consumers state that they mistakenly made payments to YYB for services they did not intend to buy. Consumers also complained about harassing phone calls they received demanding payment for YYB's services. At the hearing, Defendants denied making any phone calls to consumers.

14.     The solicitation form submitted at the hearing as Defendants' Exhibit 6 is the same solicitation form YYB faxed to the consumers who have provided declarations. For instance,

Defendant Dustin Law specifically identified the solicitation form sent to the consumer, Genuine Machine Products, Inc., as the current solicitation form used by the Defendants. *See* Plaintiff's Exhibit 15, at APP000236.

15.    Investigator McPeek testified that Defendants have been paid approximately $600,000.00 as a result of their solicitations to businesses and individuals during the time period April 2011 through March 2014. *See also* Plaintiff's Exhibit 1, Declaration of McPeek.

16.    Defendant Robert Law and Dustin Law testified that YYB's only revenue comes from these solicitations. Dustin Law testified that YYB currently has about 4,000 listings.

17.    Investigator McPeek testified that Defendants Robert Law and Dustin Law are signatories on bank accounts held in the name of, or on behalf of, YYB. *See also* Plaintiff's Exhibit 9.

## Standard Governing Preliminary Injunctive Relief

To be entitled to issuance of a preliminary injunction, a movant must typically show: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in favor of granting relief; and (4) an injunction is in the public interest. *See, e.g., Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); *see also Crowe & Dunlevy v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011). However, as the FTC contends and Defendants concede, where, as here, statutory enforcement is at issue the typical standard governing issuance of a preliminary injunction pursuant to Fed. R. Civ. P. 65 does not apply. *See, e.g.,F.T.C. v. Mallet*, 818 F. Supp.2d 142, 146 (D.D.C. 2011). Specifically, irreparable harm or an inadequate remedy at law need not be shown. *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651 (10th Cir. 2004); *Atchison Topeka and Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 260 (10th Cir.

1981) (citation omitted). Instead, the FTC bears the lesser burden of satisfying a "public interest" standard, requiring only a showing of: (1) a likelihood of ultimate success on the merits; and (2) that a balance of the equities weighs in favor of granting the requested relief. *Mallet*, 818 F. Supp.2d at 146; *see also FTC v. Millennium Telecard, Inc.*, 2011 WL 2745963 at *2 (D. N.J. July 12, 2011) (unpublished op.) (collecting cases). In addition, section 13(b) of the Act expressly provides that "[u]pon a proper showing that, weighing the equities and considering the [FTC's] likelihood of ultimate success, such action would be in the public interest . . . a preliminary injunction may be granted . . . ." 15 U.S.C. § 53(b).

## Violation of Section 5(a) of the FTC Act

The FTC has charged Defendants with violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair and deceptive acts or practices in or affecting commerce." A practice is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *F.T.C. v. LoanPointe*, *LLC*, 525 Fed. Appx. 696, 700 (10th Cir. 2013) (*quoting* 15 U.S.C. § 45(n)). A practice is deceptive where a material misrepresentation or omission is made that is likely to mislead a reasonable consumer. *Id.* (*citing FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994)).

The FTC is not required to prove actual deception. *F.T.C. v. Freecom Communications, Inc.*, 401 F.3d 1192, 1202 (10th Cir. 2005); *LoanPointe*, 525 Fed. Appx. at 701. As the Tenth Circuit has instructed:

> The primary purpose of § 5 is to lessen the harsh effects of *caveat emptor*. Such rule can no longer be relied upon as a means of rewarding fraud and deception and has been replaced by a rule which gives to the consumer the right to rely upon

representations of facts as the truth. Because the primary purpose of § 5 is to protect the consumer public rather than to punish the wrongdoer, the intent to deceive the consumer is not an element of a § 5 violation. Instead, the "cardinal factor" in determining whether an act or practice is deceptive under § 5 is the likely effect the promoter's handiwork will have on the mind of the ordinary consumer.

*Freecom*, 401 F.3d at 1202 (citations and internal quotations omitted). *See also Federal Trade Comm'n v. Standard Educ. Soc.,* 302 U.S. 112, 116 (1937) (consumer protection laws "are made to protect the trusting as well as the suspicious"); *see also Thiret v. F.T.*C. 512 F.2d 176, 180 (10th Cir.1975) ("Evidence of actual deception is not necessarily essential to a finding of unfair and deceptive practices. It is the capacity to deceive which is important.").

In *Freecom*, the Tenth Circuit addressed in detail the "reasonable consumer" standard. The court emphasized that reference to "the 'reasonable consumer' in the context of § 5 may be misleading," and noted § 5 exists to protect "the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions." *Freecom*, 401 F.3d at 1202 n. 5 (citations and internal quotations omitted).

In addition, a disclaimer or qualification in a business solicitation does not necessarily serve to remedy any practice that would otherwise be deemed deceptive or unfair. "Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression. Anything less is only likely to cause confusion by creating contradictory double meanings." *Removatron Intern. Corp. v. F.T.C.*, 884 F.2d 1489, 1497 (1st Cir.1989).

## Individual Liability for Corporate Violations of §5 of the FTC Act

The FTC seeks injunctive relief against both YYB and the individual defendants. "To obtain injunctive relief against an individual for a business entity's acts or practices, the FTC first must prove the entity violated § 5." *Freecom*, 401 F.3d at 1202-03 (citation omitted). In addition, the FTC must show either direct participation by the individual in the business entity's deceptive acts or practices, or that the individual had the authority to control them. *Id*. at 1203 (citation omitted). Where, as here, the FTC seeks to also obtain consumer redress against the individual subject to injunctive relief under § 13(b), the FTC must "proffer evidence tending to show consumers actually relied on the entity's deceptive acts or practices to their detriment" and that the "individual knew or should have known of the entity's misrepresentations." *Id*. (citations omitted).

## Consumer Redress / Disgorgement of Profits

As noted, the FTC also moves for additional relief in the form of consumer redress and a disgorgement of profits. Although this latter type of relief is not expressly authorized by statute, courts deem the statute's provision for injunctive relief to include "the full range of equitable remedies" including consumer redress and "any monetary relief sought as incidental to injunctive relief." *Freecom*, 401 F.3d at 1202 n. 6; *see also. LoanPointe,* 525 Fed. Appx. at 699 (addressing disgorgement).

Disgorgement serves two purposes: "stripping the wrongdoer of ill-gotten gains and deterring improper conduct without penalizing [the wrongdoer]." *LoanPointe*, 525 Fed. Appx. at 702 (*citing United States v. Nacchio*, 573 F.3d 1062, 1079-80 (10th Cir. 2009)). The court is afforded wide discretion in determining whether to order disgorgement and in calculating the amount of disgorgement. *Id*.

## Conclusions of Law

With the above standards governing the Court's analysis, and having determined the facts relevant to the FTC's request for preliminary injunctive relief, the Court makes the following conclusions of law.

1.      The FTC has demonstrated some likelihood of success, and the balance of equities tips in favor of granting injunctive relief.

2.      As the facts demonstrate, YYB and the individual Defendants pursued an aggressive marketing campaign that centered on faxing solicitations to businesses and individuals on a list purchased by YYB which contained contact and other information.  Although several forms of written solicitation have been used by YYB since 2011, for the last two years YYB has used the form submitted as Defendants' Exhibit 6.

3.      Under all the circumstances of the case, as established by the record developed in connection with the request for preliminary injunctive relief, the FTC has made a clear showing of some likelihood of success that the solicitation material employed by YYB for the last two years violates Section 5(a) of the Act in that it is an "unfair and deceptive act or practice in or affecting commerce."  The FTC has further made a similar showing that consumers actually relied to their detriment on YYB's deceptive acts, and Defendants Dustin Law and Robert Law knew of YYB's deceptive acts and controlled YYB during the commission of such acts.

4.      The Court finds it telling that Defendants abandoned a previous form of written solicitation that had passed muster with the United States Postal Inspector and switched to the form reflected in Defendants' Exhibit 6.  The previous form – approved by the USPIS following the issuance of the second Cease and Desist Order –  contained a bold type, large font disclaimer

advising recipients that the solicitation was not a bill or invoice, and carried no obligation to make any payments unless the offer were accepted. In contrast, the current form contains no disclaimer language, sets forth a "total amount" to be paid, states the contact and business information of the recipient under the heading "Current Listing Information," and provides instructions regarding how the recipient may "cancel this 12 month contract without any penalty or obligation," except for a pro rata payment for services rendered prior to cancellation. Moreover, nowhere on the form are the words "proposal" or "offer." These representations and omissions not only have the capacity to deceive, but they in fact deceived numerous customers as demonstrated by the consumer declarations and Better Business Bureau complaints submitted at the hearing.

5.      The deceptive nature of the solicitation is enhanced by use of the walking fingers logo made famous by Yellow Pages telephone directories. Indeed, a perusal of the Better Business Bureau complaints submitted as Plaintiff's Exhibit 14, and the consumer complaint declarations, Plaintiff's Exhibits 15-27, reveal that numerous consumers were duped by use of the logo into initially assuming the solicitation was an invoice from the telephone directory. Many of these consumers mistakenly made payment to YYB based on this misconception.

6.      A number of consumers also assert that the faxed solicitations were followed by aggressive and harassing phone calls. This assertion is reflected in both the Better Business Bureau complaints and the consumer complaint declarations. Defendants flatly deny making such phone calls. In light of the repetition and specificity of the claims that such calls were made in connection with the faxed solicitations, along with the Court's observation of the demeanor of Defendants during their hearing testimony, the Court concludes that the testimony of Defendants on this issue is not credible. For instance, in a declaration more detailed than most, Erika Kimm, an employee

of the Manhattan Christian School in Manhattan, Montana, states that after receiving a faxed solicitation from YYB, she received two follow-up phone calls. During the second phone call weeks after the first, the caller played an audio recording of portions of the initial call, threatened to turn the matter over to a collection agency, yelled at Ms. Kimm and ultimately terminated the call by hanging up. Thereafter, Manhattan Christian School received additional faxes from YYB, eventually increasing the amount purportedly due to as much as $800.00. After each phone call, Ms. Kimm noticed through caller identification that the calls were made from Oklahoma. Indeed, solicitation contact with Ms. Kimm and Manhattan Christian School is confirmed by YYB. *See* Defendants' Exhibits 13 and 20.

7.     References to follow-up phone calls by YYB can also be found in at least six of the Better Business Bureau complaints in Plaintiff's Exhibit 14. Although not necessary to establish liability under the FTC Act, the nature of the phone calls simply underscores the deceptive goals of YYB.

8.     As mentioned, the FTC is likely to prevail on the question whether YYB's use of its current fax solicitation form amounts to an unfair and deceptive act under the controlling law, but, moreover, the conduct reflected in Erika Kimm's declaration – along with similar conduct detailed in the other declarations and the Better Business Bureau complaints – appear to cross into the realm of the outrageous. Under the circumstances, the Court concludes that the balance of equities in this case clearly tips in favor of granting injunctive relief.

9.     The evidence shows that Defendants Dustin Law and Robert Law are subject to individual liability. These Defendants directly participate in and have control over the business operations of YYB. However, because there is no evidence indicating that Brandie Law has

participated in, or had the ability to control, the business of YYB since the summer of 2011, the injunctive relief regarding the individual defendants, as more fully set forth below, will not include the individual defendant, Brandie Law.

## Terms of Preliminary Injunctive Relief

Based on the foregoing, the Court finds that the FTC's request for preliminary injunctive relief is DENIED as to the individual Defendant, Brandie Michelle Law. The Court further finds that the FTC's request for preliminary injunctive relief is GRANTED as to the corporate Defendant, Your Yellow Book, Inc. and the individual Defendants, Dustin Law and Robert Law (hereinafter, Corporate Defendant, Individual Defendant, or collectively, Defendants). The terms of the preliminary injunctive relief are as follows:

## I.     Prohibited Business Activities

IT IS THEREFORE ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, sale, or provision of any good or service, including Internet directory listings, are enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication any material fact, including but not limited to:

A.      That a consumer has a preexisting business relationship with any Defendant;

B.      That a consumer has agreed to purchase a good or service from any Defendant; or

C.      That a consumer owes money to any Defendant.

## II.  Posting Notice of Lawsuit on Website

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are enjoined from failing to immediately take whatever action is necessary to ensure that any website used by any Defendant related to the offering for sale, sale, or posting of Internet directory listings, or related to the collection of payment from any consumer for a listing in any Defendants' Internet directory, including the website located at http://www.youryellowbook.com, shall:

A.    Prominently display, in a stand-alone fashion not obscured by other text, the following statement:

> The Federal Trade Commission ("FTC") has filed a lawsuit against Your Yellow Book, Inc, alleging that it has engaged in deceptive practices related to the offering for sale and sale of listings in its Internet directory. The United States District Court for the Western District of Oklahoma has issued a preliminary injunction order prohibiting the alleged practices. You may obtain additional information directly from the FTC at www.ftc.gov.

B.    Provide a hypertext link to the FTC's home page at www.ftc.gov, or another home page designated by counsel for the FTC.

## III.  Asset Freeze

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are enjoined from:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any asset that is:

1.     owned, controlled, or held by, in whole or in part, for the benefit of, or subject to access by, or belonging to, any Defendant;

2.     in the actual or constructive possession of any Defendant;

3.     held as a retainer or deposit for the provision of any goods or services to any Defendant, except as to the payment of Defendants' attorney fees as may be authorized by the Court; or

4.     in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any other entity directly or indirectly owned, managed, or controlled by, or under common control of, any Defendant, including any assets held by or for any Defendant in any account at any bank or savings and loan institution, or with any credit card processing agent, automated clearing house processor, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the territorial United States;

B.     Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities in the name of any Defendant, or subject to access by any Defendant or under any

Defendant's control, without providing the FTC prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Section;

C.      Cashing any checks or depositing any payments from customers or clients of Defendants;

D.      Incurring charges or cash advances on any charge card, credit card, debit card, or lines of credit issued in the name, singly or jointly, of any Defendant;

E.      Obtaining a personal or secured loan that encumbers any asset of any Defendant; or

F.      Incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

The assets affected by this Section shall include both existing assets and assets acquired after the effective date of this Order.

## IV.    Duties of Third Parties Holding Defendants' Assets

IT IS FURTHER ORDERED that any financial institution, business entity, or person maintaining or having custody or control of any account or other asset of any Defendant, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with Defendants, that is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A.      Hold and retain within its control and prohibit the assignment, conversion, disbursement, dissipation, encumbrance, hypothecation, liquidation, loan, pledge, removal, sale, transfer, withdrawal, or other disposal of any asset held by or under its control that is:

1.      Held on behalf of, or for the benefit of, any Defendant;

2.      Held in any account maintained in the name of, or for the benefit of, or subject to withdrawal by, any Defendant;

3.       Associated with charges, credits, or debits made on behalf of any Defendant including reserve funds or settlement funds held by payment processors or their agents, insurance companies, or other persons; or

4.      Subject to access or use by, or under the signatory power of, any Defendant.

B.      Deny Defendants access to any safe deposit boxes or storage facilities that are either:

1.      In the name, individually or jointly, of any Defendant; or

2.      Subject to access by any Defendant.

C.      Provide the FTC, within seven (7) business days of the date of service of this Order, if not previously provided, a sworn statement setting forth:

1.      The identification number of each account or asset in the name, individually or jointly, of any Defendant, or held on behalf of, or for the benefit of, any Defendant, including all trust accounts managed on behalf of any Defendant or subject to any Defendant's control;

2.      The balance of each such account, or a description of the nature and value of such asset;

3.      The identification and location of any safe deposit box, commercial mail box, or storage facility that is either in the name, individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant, whether in whole or in part; and

4.      If the account, safe deposit box, storage facility, or other asset has been closed or removed, the date closed or removed and the balance on said date.

D.     Within seven (7) business days of a written request from the FTC, and if not previously provided, provide to the FTC copies of all records or other documents pertaining to each such account or asset, including originals or copies of account applications, account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

E.     This Section shall apply to existing accounts and assets, assets deposited or accounts opened after the effective date of this Order, and any accounts or assets maintained, held, or controlled three years prior to the effective date of this Order. This Section shall not prohibit transfers in accordance with any provision of this Order, any further order of the Court, or by written agreement of the parties.

## V.     Duties of Third Parties to Withhold Defendants' Mail

IT IS FURTHER ORDERED that:

A.     Any third party with whom any Defendant maintains an account and/or mail-receiving box, which may include the following:

*     10600 South Pennsylvania Avenue, Suite 16, Oklahoma City, OK 73170
*     P. O. Box 892335, Oklahoma City, OK 73189
*     P. O. Box 95343, Oklahoma City, OK 73143

upon being served with a copy of this Order, shall for the duration of this Order, forward to the FTC all mail received that is addressed to or from any Defendant and/or addressed to or from any other name under which any Defendant is doing business. This mail shall be forwarded to the FTC at the following address:

Federal Trade Commission
Attn: Brent McPeek
1999 Bryan Street, Suite 2150
Dallas, TX 75201
Fax: (214) 979-9395
Email: rtepfer@ftc.gov

The FTC shall open and retain this mail for the duration of this Order, or until further order of the Court, or stipulation of the parties; and

B.       Defendants, within seven (7) business days of service of this Order, shall provide to counsel for the FTC, if not previously provided, a complete list of all locations where any Defendant has received mail from January 1, 2011 through the date of entry of this Order.  Defendants shall notify counsel for the FTC of any locations designated to receive mail by any Defendant after the date of entry of this Order, within seven (7) business days of such designation.  Such notice shall include, for each location, the name and address of the location, all names under which Defendant(s) receive or may receive mail at that location, and a copy of any agreement or application creating the designation; and

C.       Within seven (7) business days of the FTC's receipt of any mail as set forth in this Section, the FTC shall determine whether such mail relates to the business practices addressed by this Order, or the related matters addressed by this Order, and shall promptly return and deliver any mail to its addressee if such mail does not reasonably relate to the business practices or related matters as address by this Order.

## VI.   Suspension of Collection on Accounts

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are enjoined from assigning any right to collect, attempting to collect, or collecting any payment for any Internet directory listings.

## VII.   Preservation of Records and Report of New Business Activity

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are enjoined from:

A.    Failing to make and keep accounts, bank statements, books, cash disbursements ledgers and source documents, cash receipts ledgers, current accountants' reports, documents indicating title to real or personal property, general journals, general ledgers, records, and any other data which, in reasonable detail, accurately and fairly reflect the disbursements, dispositions, incomes, transactions, and uses of Defendants' assets;

B.    Altering, concealing, destroying, erasing, mutilating, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically stored materials, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control

of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C.      Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the FTC with a written statement disclosing: the name of the business entity; the address, telephone number, e-mail address, and website address of the business entity; the names of the business entity's officers, directors, principals, managers, and employees; and a detailed description of the business entity's intended activities.

## VIII.    Prohibition on Disclosing Customer Information

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are enjoined from:

A.      Leasing, renting, or selling the address, bank account number, birth date, credit card number, e-mail address, name, Social Security number, telephone number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with the advertising, marketing, promoting, offering for sale, sale, or provision of Internet directory listings; and

B.      Benefitting from the address, bank account number, birth date, credit card number, e-mail address, name, Social Security number, telephone number, or other financial or identifying

personal information of any person from whom or about whom any Defendant obtained such information in connection with the advertising, marketing, promoting, offering for sale, sale, or provision of Internet directory listings.

Provided, however, that Defendants may disclose such financial or identifying personal information to a law enforcement agency or as required by any law, regulation, or court order.

## IX. Distribution of Order by Defendants

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this Order to each of their corporations, subsidiaries, affiliates, partners, divisions, sales entities, successors, assigns, members, officers, directors, employees, independent contractors, agents, servants, spouses, representatives, and any other persons in active concert or participation with them. Within seven (7) business days following service of this Order, Defendants shall serve on the FTC an affidavit identifying the name, title, addresses, telephone numbers, date of service, and manner of service of the persons Defendants have served with a copy of this Order in compliance with this provision.

## X. Service of Order

IT IS FURTHER ORDERED that copies of this Order may be served by facsimile transmission, personal or overnight delivery, first class mail, electronic mail, or personally, by agents and employees of the FTC or any state, federal, or by private process server, on: (1) Defendants; (2) any financial institution or person that holds, controls, or maintains custody of any documents or assets of any Defendant; or (3) any other financial institution or person that may be subject to any provision of this Order. Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

**XI.** **Consumer Reporting Agencies**

IT IS FURTHER ORDERED that, pursuant to Section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, any consumer reporting agency shall furnish a consumer or credit report concerning any Defendant to the FTC.

**XII.** **Obligations Under Temporary Restraining Order**

The entry of this Order granting preliminary injunctive relief does not excuse or moot Defendants' pending obligations to comply with the terms of the Temporary Restraining Order [Doc. No. 10] entered on July 25, 2014, for the period of its effectiveness, including any timeliness provisions set forth therein. Otherwise, this Order supersedes the Temporary Restraining Order, and the same is hereby dissolved. Nothing set forth in this Order shall preclude the FTC from seeking redress for any violations of the Defendants' obligations set forth in the Temporary Restraining Order.

This Preliminary Injunction shall remain in force and effect throughout the pendency of these proceedings, until further order of the Court.

IT IS SO ORDERED this 21st day of August, 2014.


_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE