IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| FEDERAL TRADE COMMISSION, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-14-786-D |
| YOUR YELLOW BOOK, INC., a corporation, also d/b/a YOUR YELLOW BOOK, | ) ) ) ) | |
| BRANDIE MICHELLE LAW, individually and as an officer of YOUR YELLOW BOOK, INC., | ) ) ) ) ) | |
| DUSTIN R. LAW, individually and as an officer of YOUR YELLOW BOOK, INC., and | ) ) ) ) | |
| ROBERT RAY LAW, individually and as an officer of YOUR YELLOW BOOK, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## FINDINGS AND ORDER OF CONTEMPT

Before the Court is Plaintiff's Emergency Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt of Court for Violating Multiple Provisions of the Temporary Restraining Order [Doc. No. 35]. Defendants have filed their response [Doc. No. 43]. On August 20, 2014, the Court conducted a hearing on the matter.

### Relevant Procedural History and Background

Plaintiff, the Federal Trade Commission (FTC) filed a Complaint on July 24, 2014, alleging Defendants have violated § 5 of the Federal Trade Commission Act ("FTC Act"), 15, U.S.C. § 45. Defendants are engaged in the business of providing internet business-listing services. The FTC

seeks injunctive relief to enjoin Defendants from continuing to conduct what the FTC alleges is unfair and deceptive business practices. The FTC further alleges Defendants have been paid approximately $600,000.00 from consumers as a result of their deceptive and unfair business practices and in addition to injunctive relief, seeks additional equitable remedies of restitution and disgorgement. Therefore, the FTC also requested an asset freeze to prevent Defendants from dissipating funds alleged to have been wrongfully taken from consumers.

On July 24, 2014, the Court entered an *Ex Parte* Temporary Restraining Order (TRO) [Doc. No. 10]. By further Order of the Court entered August 4, 2014 [Doc. No. 22] and by agreement of the parties, the terms of the TRO were extended to August 22, 2014.

The Defendants' obligations pursuant to the TRO are at issue before the Court.[1] In particular, the FTC contends Defendants have violated the following provisions of the TRO: (1) Section II. Posting Notice of Lawsuit on Websites; (2) Section III. Asset Freeze; (3) Section VII. Financial Statements and Accounting; and (4) Section XI. Preservation of Records and Report of New Business Activity.

The FTC did not present any evidence at the hearing to demonstrate that the conduct of Defendant Brandie Law is at issue in the contempt proceedings, except with respect to the financial disclosures required by Section VII of the TRO. The primary focus of the Court's analysis, therefore, relates to the conduct of individual defendants Dustin Law and Robert Law, and the corporate defendant, Your Yellow Book, Inc. (YYB).

---

[1] During the pendency of the FTC's contempt motion, on August 18, 2014, the Court held a hearing on the FTC's request for preliminary injunctive relief. On August 21, 2014, the Court entered an Order [Doc. No. 50] granting preliminary injunctive relief. As set forth in that Order, it does not in any way moot the FTC's motion for contempt citation as to Defendants' alleged violations of the TRO.

## **Standard Governing Issuance of Contempt Citation**

This is a civil contempt proceeding. *See F.T.C. v. Kuykendall*, 371 F.3d 745, 753 (10th Cir. 2004) (citation omitted) (holding that contempt proceedings arising out of FTC action charging defendants with deceptive and misleading telemarketing practices were civil where contempt sanction was remedial and for the benefit of the complainant). A district court has broad discretion in using its contempt powers to require adherence to court orders. *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1209 (10th Cir. 1992) (citations omitted). To establish that Defendants are in contempt, the FTC must prove by clear and convincing evidence that: (1) a valid court order existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. *Kuykendall*, 371 F.3d at 756-57.

Pursuant to Fed. R. Civ. P. 65(d)(2) a party who receives actual notice of a TRO "by personal service *or otherwise*" is bound by the order. Fed. R. Civ. P. 65(d)(2) (emphasis added). Personal service, therefore, is not required and a party with knowledge of the TRO is bound by its terms. *See, e.g., F.T.C. v. Neiswonger*, 494 F.Supp.2d 1067, 1079 (E.D.Mo.2007) ("Personal service is not required under Rule 65(d). All that is required is knowledge of the mere existence of the injunction; not its precise terms. Furthermore, direct evidence is not required to sustain the FTC's burden of showing actual notice." (citation omitted)).

Where contempt results in injury to a party, that party may be entitled to compensation. *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1318 (10th Cir. 1998). Once contempt has been established by clear and convincing evidence, proof of resulting damages need only be established by a preponderance of the evidence. *Kuykendall*, 371 F.3d at 754.

**Analysis**

The Court has considered the parties' briefing and the testimony and exhibits presented at the hearing on August 20, 2014.[2] The Court makes the following findings of fact and conclusions of law. The Court's findings are made after careful consideration of the demeanor and credibility of the witnesses and weighing all the testimony and evidence presented.

**I.    Findings of Fact**

*Posting Notice of Lawsuit on Website – Section II of the TRO*

1. The TRO requires Defendants to post the following notice to their website regarding the pending litigation.

> The Federal Trade Commission ("FTC") has filed a lawsuit against Your Yellow Book, Inc., alleging that it has engaged in deceptive practices related to the offering for sale and sale of listings in its internet directory. The United States District Court for the Western District of Oklahoma has issued a temporary restraining order prohibiting the alleged practices. You may obtain additional information directly from the FTC at www.ftc.gov.

*See id.*, Section II, ¶ A.

2. At the hearing, FTC Investigator Brent D. McPeek testified that an August 15, 2014, screen capture of Defendants' website, located at http://www.youryellowbook.com shows the following language posted in the same paragraph and directly above the notice required by the TRO:

> Regretfully Your Yellow Book has been mistaken for another company that uses what we consider illegal and unbusiness like practices. While this is waiting to be resolved we are forced to provide the following statement from the FTC. Hopefully this will be resolved quickly and we can remove this statement. Sorry for the inconvenience.

---

[2] All exhibits referenced in this Order were admitted at the hearing.

*See also* Plaintiff's Exhibit 31 [Doc. No. 35-1], Fourth Declaration of McPeek at ¶ 6 and Attachment H [Doc. No. 35-9] screen capture (emphasis added).

3. Defendants have submitted no credible evidence that substantiates the statement that YYB has been mistaken for another company by the FTC.

4. Though Defendants maintain the additional language they posted to their website does not violate the TRO, Defendants have voluntarily agreed to remove this language from their website. *See* Defendants' Response at p. 6.

### *Asset Freeze -- Section III of the TRO*

5. Section III of the TRO headed "Asset Freeze" enjoins the Defendants who receive "actual notice of th[e] [TRO], whether acting directly or indirectly . . . from . . . "[t]ransferring, liquidating, . . . dissipating, disbursing . . . spending, withdrawing, . . . or otherwise disposing of any asset that is "owned, controlled or held by . . . any Defendant," in the "actual or constructive possession of any Defendant" or that is "in the actual possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any corporation, partnership, trust, or any other entity directly or indirectly owned, managed, or controlled by, or under common control of, any Defendant, including any assets held by or for any Defendant in any account at any bank for savings and loan institution . . . ."

6. As previously set forth, on July 24, 2014, the Court entered the TRO at issue. At the request of the parties, the Court takes judicial notice of the following regarding service of the TRO on each of the Defendants:

• Defendant Robert Law was served on Monday, July 28, 2014, time unspecified.

• Defendant Brandie Michelle Law was served on July 30, 2014 at 3:20 p.m.

5

- Defendant YYB, Inc. was served on Wednesday, July 30, 2014 at 7:26 p.m.[3]

- Defendant Dustin Law was served on Wednesday July 30, 2014, time unspecified.

7. Robert Law and Dustin Law live at the same residence and each were served with the TRO at this residence, 1009 N.E. 6th Street, Moore, OK. *See* Notices of Service [Doc. Nos. 13 and 19]. The business operations of YYB are conducted from this residence.[4]

8. Dustin Law testified that on July 28, 2014, some time between 9:00 a.m. and 10:00 a.m., he made two separate withdrawals in the amount of $9,800.00 each from a corporate bank account at JP Morgan Chase Bank. *See also* Plaintiff's Exhibit 31, Attachment J [Doc. No. 35-11]. Both Dustin Law and Robert Law testified that the withdrawals were made at the direction of Robert Law and without notice of the TRO.

9. Defendants do not dispute that this corporate bank account is subject to the asset freeze ordered pursuant to the terms of the TRO.

10. Dustin Law also testified that he was prohibited from withdrawing funds on his personal bank account on the same day, July 28, 2014, but that he did not know why he could not access those funds and the bank could not tell him why.

11. Dustin Law further testified that on July 29, 2014, some time between 3:00 p.m. and 4:00 p.m., he made another withdrawal in the amount of $9,800.00 from the same corporate bank account. Robert Law denies directing Dustin Law to make this third withdrawal.

---

[3] Defendant Dustin Law received service on behalf of YYB.

[4] The FTC presented the testimony of FTC Investigator McPeek that on July 29, 2014, he faxed and emailed notice of the TRO to Defendants and left voice mail messages on phone numbers belonging to Dustin Law and Robert Law.

12.     The total amount withdrawn by Dustin Law on July 28, 2014 and July 29, 2014 is $29,400.00.

13.     Dustin Law testified that he kept approximately $1000.00 of the funds withdrawn and spent it on going to bars, and on food and gas. He testified he gave the balance of the funds to Robert Law.

14.     Robert Law testified that on July 28, 2014, the same night as the initial withdrawals, he spent approximately $7,300.00 at a casino and lost it all.

15.     On August 4, 2014, the Court entered an Order [Doc. No. 22] modifying the terms of the TRO to allow Defendants to access up to a total of $5000.00 for payment of attorney fees. Defendants used a portion of the funds withdrawn by Dustin Law on July 28, 2014 and July 29, 2014 to pay their attorneys.

16.     On August 7, 2014, Dustin Law re-deposited $17,000.00 to the corporate bank account from which it had been withdrawn. *See* Plaintiff's Exhibit 31, Attachment K [Doc. No. 35-12].

17.     As of August 20, 2014, of the $29,400.00 withdrawn from the corporate bank account, $7,400.00 had not been accounted for by Defendants, despite requests by the FTC.

18.     Dustin Law testified that he had no communications with Robert Law on July 28, 2014, after Robert Law was served with the TRO on that date. Dustin Law testified, however, that he spoke to Defendant Robert Law on the morning of July 29, 2014, prior to making the third withdrawal from the Chase corporate bank account in the amount of $9,800.00. Dustin Law testified that Robert Law did not tell him about the TRO at that time.

*Financial Statements and Accounting – Section VII of the TRO*

19. The TRO requires the Defendants to complete and deliver to the FTC financial disclosure forms.

20. Testimony and exhibits submitted at the hearing demonstrate that Defendants have submitted to the FTC incomplete and inaccurate financial disclosure forms. *See* Plaintiff's Exhibit 31, Attachments L-O [Doc. Nos. 35-13 through 35-16]. *See also* Plaintiff's Exhibit 33 [Doc. No. 35-20] (detailing errors, omissions and misrepresentations in Defendants' sworn financial statements).

21. Defendants have agreed to "re-complete the financial disclosure forms to correct the errors, to the Court's satisfaction." *See* Defendants' Response at p. 6.

*Preservation of Records – Section XI of the TRO*

22. Section XI of the TRO provides that Defendants are enjoined from: "[a]ltering, concealing, destroying, erasing, mutilating, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically stored materials, that relate in any way to the business practices or business or personal finances of Defendants . . . ."

23. On August 11, 2014, Dustin Law produced to the FTC a laptop computer for imaging pursuant to Section XI of the TRO. Dustin Law testified that this laptop computer held the business records of YYB. Hugh Huettner, a Technical Computer Forensic Examiner for the FTC, testified that he imaged the laptop's hard drive on that same day. *See also* Plaintiff's Exhibit 32, Declaration of Hugh Huettner [Doc. No. 35-19], ¶¶ 10-11.

24. At the hearing, Mr. Huettner testified that during the time period from 10:30 p.m. on August 10, 2014, to 12:54 a.m. on August 11, 2014, approximately 2,000 files were deleted from

the laptop computer and placed in the computer's recycle bin. *See also* Plaintiff's Exhibit 32 [Doc. No. 35-19], Declaration of Hugh Huettner, ¶13.[5]

25. Investigator McPeek testified that a majority of the deleted files are business records of YYB and include records of faxes sent by YYB, copies of YYB invoices, images of checks made payable to YYB and received from business, and similar documents. *See also* Fifth Declaration of McPeek [Doc. No. 44], ¶¶ 5-6.

26. Dustin Law testified that he was aware of and understood the terms of the TRO that enjoined him from deleting documents on his laptop computer unless those documents were purely personal in nature. Dustin Law admitted that he deleted files that included files related to the business operations of YYB. According to Dustin Law, he accidentally deleted those business files.

27. Mr. Huettner testified that the current government contract rate for computer forensic services is approximately $150.00 per hour and that the current commercial rate for those services is approximately $300.00 per hour. Mr. Huettner estimated that, exclusive of travel time, he spent approximately 16 hours providing forensic services in this case on behalf of the FTC.

## II. Conclusions of Law

As more fully set forth below, the Court finds Defendants are not in contempt of Section II of the TRO. The Court further finds the FTC has established by clear and convincing proof, that Defendants Dustin Law and Robert Law, individually and on behalf of YYB, have violated Sections III and VII of the TRO. Finally, the Court finds the FTC has established by clear and convincing

---

[5] In his Declaration, Mr. Huettner states that the files were deleted between the hours of approximately 2:54 a.m. and 3:14 a.m. *See* Declaration of Hugh Huettner, ¶13.

9

evidence that Defendant Dustin Law, individually and on behalf of YYB, violated Section XI of the TRO.

### *Posting Notice of Lawsuit on Website – Section II of the TRO*

1. The TRO does not contain any language which would prohibit Defendants from making any statements of their own regarding the litigation and posting those statements on their website. Therefore, the Court finds Defendants are not in contempt of Section II of the TRO. The Court agrees, however, with the FTC's concerns that Defendants' statements undermine the notice required by the TRO.[6] Defendants have voluntarily agreed to remove the language from their website. *See* Defendants' Response [Doc. No. 43] at p. 6. Therefore, while Defendants are not in contempt of the TRO, they are directed to remove the additional language from its current position on the website based upon their representations that they voluntarily agree to take that action.

### *Asset Freeze -- Section III of the TRO*

2. The FTC has not shown by clear and convincing evidence that the withdrawals of funds from the corporate bank account on July 28, 2014, were made with actual knowledge of the terms of the TRO, and Defendants are not in contempt with respect to actions taken on that date. Although Defendant Robert Law was served with the TRO on July 28, 2014, Plaintiff did not establish by clear and convincing evidence that he was served prior to 10:00 a.m. – the latest time at which a withdrawal of funds was made on that date. Defendant Dustin Law was not served with the TRO until July 30, 2014. Plaintiff has not shown by clear and convincing evidence that Dustin Law had knowledge of the TRO on July 28, 2014. Therefore, Defendants Dustin Law and Robert

---

[6]The Court has directed in the preliminary injunction that the notice be "[p]rominently display[ed], *in a stand-alone fashion not obscured by other text*." *See* Preliminary Injunction [Doc. No. 50] at p. 15, ¶ II(A) (emphasis added).

Law have not violated Section III of the TRO as to the two withdrawals of funds on July 28, 2014 in the amount of $9,800.00 each.

3. However, Defendants are in contempt of Section III of the TRO as to the third withdrawal of funds from the corporate bank account made by Dustin Law on July 29, 2014, in the amount of $9,800.00. Clear and convincing evidence establishes the July 29, 2014, withdrawal was made with actual knowledge of the terms of the TRO. The record shows Robert Law was served with the TRO on July 28, 2014 and therefore had actual notice of its terms. Dustin Law testified that he spoke to Robert Law – in their home – the following morning before making the third withdrawal of funds. Dustin Law's testimony that the TRO was not discussed with Robert Law on the morning of July 29, 2014 is not credible. YYB is a corporation owned, operated and controlled exclusively by these individual Defendants. The operations of YYB provide Defendants' sole source of income. It is not credible to this Court that Defendant Robert Law would fail to even mention to Dustin Law the fact that he had been served with a TRO of the magnitude, degree and force as the one at issue here – a TRO which entirely disrupted the business operations of YYB and froze all assets of YYB. Further support for the Court's conclusion is found in Dustin Law's testimony that he knew funds in his personal bank account had been frozen. In addition, the Court reaches this conclusion based on Dustin Law's testimony that he withdrew the amount of $9,800.00 each time because any amount over $10,000 would be "flagged by the IRS." The Court also finds that Dustin Law's testimony regarding the reasons the funds were withdrawn is not credible. According to Dustin Law, he and Robert were concerned their accounts had been "hacked." Given the timing of the withdrawals in relation to the issuance and service of the TRO, it is clear the funds were withdrawn because of the TRO. The Court concludes, therefore, that Defendant Dustin Law had actual notice of the TRO on

11

the morning of July 29, 2014, prior to the third withdrawal of funds that afternoon. The Court further concludes Robert Law knew about the third withdrawal of funds and that the withdrawal violated the terms of the TRO. Defendants Dustin Law and Robert Law, therefore, are in contempt for violating Section III of the TRO.

*Financial Statements and Accounting – Section VII of the TRO*

4. Defendants concede the disclosure forms provided to date are not in compliance with the requirements of Section VII of the TRO. The Court's own review of those forms confirms they are deficient in many respects. Clear and convincing evidence establishes, therefore, that Defendants are in contempt for failing to comply with Section VII of the TRO. Defendants have agreed to re-submit the financial disclosures. *See* Defendants' Response at p. 6. Defendants' cavalier attitude toward their obligations is of serious concern to the Court. Defendants' conduct evinces a pattern and practice of disregarding obligations imposed upon them by court order both in the present litigation and in previous litigation. For example, as more fully set forth in the preliminary injunction order, Defendants have previously disregarded obligations imposed upon them pursuant to cease and desist orders entered by the United States Postal Inspection Service. However, in light of Defendants' voluntary agreement to re-submit their financial disclosures, at this time the Court will not impose sanctions for Defendants' contempt.

*Preservation of Records – Section XI of the TRO*

5. Clear and convincing evidence establishes that Defendant Dustin Law violated the terms of Section XI of the TRO when he deleted over 2000 files on the eve of producing to the FTC the laptop computer containing YYB's business records. The deleted files were not personal files but plainly and clearly files pertaining to the business operations of YYB. Dustin Law's testimony

that the deletion of files was accidental is not credible. The files were deleted over a period of time, not all at once, and on the eve of production. The Court, therefore, finds that Dustin Law acting individually and on behalf of YYB is in contempt of Section XI of the TRO. The Court orders Defendants Dustin Law and YYB to reimburse the FTC for the forensic services provided by Mr. Huettner, as those expenses were incurred as a result of Defendants' contempt of the TRO. Based on Mr. Huettner's testimony, the Court finds the amount of reimbursement to be paid by Dustin Law is $2400.00 (16 hours of service at the rate of $150.00 per hour).

### III. Directions and Sanctions

All Defendants have voluntarily agreed to take the following actions as fully set forth in their Response: (1) provide sworn assurances that no additional documents or information have been destroyed and that all required documents have been provided to Plaintiff; (2) provide an accounting of their business assets and submit to depositions regarding their business assets; and (3) remove the offending language on www.youryellowbook.com to which Plaintiff objects from its current location so that it does not obscure the notice required by the TRO and the preliminary injunction.

The Court sets the following deadlines within which Defendants are to complete these actions: (1) Defendants are to provide the sworn assurances as to documents and other information and the accounting of their business assets within ten (10) days of the date of this Order; (2) the parties are to find a mutually agreed upon date and time for conducting Defendants' depositions, provided that the depositions are scheduled to be conducted within thirty (30) days of the date of this Order; and (3) Defendants are to remove the additional language posted on www.youryellowbook.com, as more fully identified herein, within seven (7) days of the date of this Order.

In addition to the above actions to which Defendants have voluntarily agreed, the Court orders the following as to the specific Defendants identified:

Defendants Brandie Law, Dustin Law, Robert Law and Your Yellow Book, Inc. must re-complete the financial disclosure forms, as required by Section VII of the TRO, accurately and completely, and must cure any and all deficiencies cited by Plaintiff. Defendants shall file re-completed financial disclosure forms under seal with the Court, and serve the same upon counsel for Plaintiff within ten (10) days of the date of this Order. Defendants are hereby granted leave to file the financial disclosures under seal.

Defendants Dustin Law, Robert Law and Your Yellow Book, Inc. are ordered to provide a full accounting of the $9,800.00 withdrawn on July 29, 2014, from the corporate bank account at JP Morgan Chase Bank. Defendants are to identify the current location of the money. If the money has been spent, within ten (10) days of the date of this Order, Defendants are to provide detailed and accurate information as to where the money was spent, supported by any available documentation, including but not limited to invoices, receipts or other records of how the money was spent.

Defendants Dustin Law and Your Yellow Book, Inc. are further ordered to pay to Plaintiff the sum of $2,400.00 as reimbursement for the services provided by Hugh Huettner, the Technical Computer Forensic Examiner retained by Plaintiff. Payment shall be provided to Plaintiff within ten (10) days of the date of this Order. If Defendants contend they do not have funds sufficient to make the Court-ordered payment, then within ten (10) days of the date of this Order, Defendants shall submit a sworn affidavit to the Court attesting to that fact. In any event, the amount of $2,400.00 shall remain due and owing to Plaintiff until paid in full.

Defendants are advised that failure to comply with the terms of this Order may result in further findings of contempt and result in the imposition of additional and more severe sanctions.

IT IS SO ORDERED this 29th day of August, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE